Brent Adler In pro per
7044 Keighley St.
San Diego, Ca 92120

FILED
NOV 18 2013
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Brent Adler,

    Plaintiff

v.

Fernando Gonzalez,
K. Holland,
Terry Steadman,
Mike Bryant,
D. Zanchi
J. Lundy,
Chuck Schuyler,

    Defendents

Case no. 1: 13 CV - 01867 SKO    PC
COMPLAINT FOR DAMAGES
[42 USC Section 1983]
JURY TRIAL DEMANDED

RECEIVED
NOV 18 2013
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

Factual Summary

1. This is a civil action arising under the United States Constitution, particularly the Eighth Amendment of the US Constitution. This action also arises under Federal law, particularly Title 42 of the United States Code Section 1983 alleging violation of Plaintiff's Constitutional, Civil, and Human Rights while in custody of the California Department of Corrections and Rehabliltation (Hereafter "CDCR") at California Correctional Institution (Hereafter "CCI").

2. Plaintiff Brent Adler was injured when Defendant's Gonzalez, Holland, Steadman, Bryant, Zanchi, Lundy, and Schuyler, while acting under the color of state law, deprived this plaintiff of the

minimal civilized measure of life's necessities, particularly adequate outdoor exercise causing him muscle atrophy and loss in strength and endurance causing him to feel depressed.

3. Defendant's Gonzalez, Holland, Steadman, Zanchi, Bryant, Lundy, and Schuyler's actions were willful and without excuse. The action and inactions, both joint and severally, was the proximate cause of the deprivation of this Plaintiff's Constitutional right to be free from Cruel and Unusual Punishment. Plaintiff was subjected to a deprivation of this basic human need due to their deliberate indifference to the substantial risk of harm of not providing adequate outdoor exercise. Due to their deliberate indifference plaintiff was subjected to a wanton and unnecessary infliction of pain. This risk was obvious and this risk was disregarded and the deprivation was not related to any legitimate penological goal.

## JURISDICTION

4. The jurisdiction of this court is invoked pursuant to 28 USC Section 1343 ( c ) which gives this court jurisdiction over matters concerning the deprivation of constitutional and civil rights guaranteed by 42 USC Section 1983.

## PARTIES

5. Plaintiff Brent Adler is an adult White Male ,United States Citizen, residing in San Diego California

6. Defendant Fernando Gonzalez was Warden of CCI from 2008-2010, Defendant Holland was Chief Deputy Warden of CCI from 2008-2011, Defendant Terry Steadman was Associate Warden at CCI from 2009-2010, Defendant D. Zanchi was Facility IV-A Captain from 2008-2009, Defendant Mike Bryant was Facility IV-A Captain from 20009-2010, Defendant J. Lundy was Facility IV-A Captain from 2010-2011, Defendant Chuck Schuyler was Facility IV-A Unit

Lieutenant from 2009-2011 on Second Watch. All Defendant's are sued in their individual capacities.

## STATEMENT OF FACTS

7. Plaintiff received zero hours of outdoor exercise from November 1, 2008 through December 9, 2008.

8. Plaintiff was housed on Facility IV-B from November 1, 2008 through November 5, 2008 then moved to Facility IV-A on November 5, 2008.

9. Plaintiff was placed into Administrative Segregation (AD-SEG) on Facility IV-A in housing unit four November 5, 2008 through December 7, 2008.

10. Facility IV-A was equipped with Individual Exercise Module (IEM) recreation yards in November and December 2008.

11. Plaintiff's housing unit was not scheduled for any outdoor exercise the entire time he was held in AD-SEG in housing unit four.

12. Plaintiff's housing unit was converted to General Population in December, B section, and Plaintiff was "released" to the general population when this occurred.

13. Plaintiff was housed in housing unit four from December 2008 through December 2010, except for a one month period in 2009 when he was out to court.

14. Plaintiff was housed in housing unit two from December 2010 through February 1, 2011, after which he was transferred to High Desert State Prison.

15. During normal program on Facility IV-A Defendant's Gonzalez, Holland, and Zanchi instituted an outdoor exercise schedule which consisted of one housing unit being permitted outdoor exercise at a time every other day, rotating between morning and afternoon sessions.

16. Facility IV-A consisted of four general population housing units.

17. Morning yard was consistently released after 9 AM and was recalled at about 10:30 AM.

18. Afternoon yard was consistently released after 1:00 PM and recalled at about 3:30 PM.

19. Individuals with job assignments were not permitted to attend outdoor recreation during their work hours.

20. On Facility IV-A during yard release the exercise equiptment and the track were closed.

21. Yard release took about 30 to 45 minutes to complete.

22. In the afternoon yard sessions the exercise equiptment and the track were closed during yard release and prior to shift change of officers at about 1:45 PM to the completion of shift change at about 2:15 PM.

23. Due to the closure of the exercise equiptment/track for yard release, then shift change, the exercise equiptment / track was not open for use until after 2:15 in the afternoon, and many yards didn't open for use for the housing unit on the yard from 2009-2010.

24. Plaintiff's housing unit, which consisted of about 120 prisoners, were confined to a small asphalt area consisting of one and a half full court basketball area and a handball area.

25. During Plaintiff's morning yard on Facility IV-A many exercise opportunities were restricted because officers running the yard would not open the area for exercise equipment / track without justification.

26. Plaintiff was forced to choose between his limited amounts outdoor exercise and to attend the law library to litigate his pending Habeas Corpus Petition, only allowing Plaintiff law library "Open Line" access during his yard time in 2009.

27. During January 2009 and January 2011 various program status reports ("PSR) modified Facility IV-A outdoor exercise opportunities.

28. In the first quarter of 2009 various "PSR's" were instituted which had no association with Plaintiff or his racial group but nevertheless restricted his outdoor exercise.

29. Facility IV-A had a period of normal program, upon information and belief, from june 2009 through December30, 2009,

30. In August 2009 Plaintiff was elected to the job position of Men's Advisory Council Chairman with the work days and hour of Monday through Friday 7:30 am – 3:30 pm.

31. Due to his work assignment Plaintiff was restricted to a maximum amount of outdoor exercise of one day per week, either Saturday or Sunday, for one and a half to two and a half hours maximum, from August 2009 through the down day schedule beginning sometime in mid 2010.

32. Plaintiff was permitted zero hours of outdoor exercise for periods of fourteen days when his scheduled Saturday or Sunday yard was cancelled or he would receive a visit from his family.

33. Plaintiff met in his capacity as "MAC" Chairman with defendant's Gonzalez, Holland, Bryant, and Schuyler weekly and/or monthly in 2009 and discussed the substantial risk of harm posed by the inadequate amounts of outdoor exercise given on Facility IV-A. The limited or complete closure of the exercise equipment and track was discussed, delayed yard releases, and the release procedures as well which would take up substantial portions of the outdoor exercise time.

34. Plaintiff verbally requested increasing the number of housing units being permitted on the yard at one time increasing the amount of outdoor exercise for workers, but these requests were not entertained.

35. In the year of 2010 Plaintiff's outdoor exercise was restricted to zero hours for multiple weeks at a time for "PSR's" which were regarding threats not associated with this plaintiff or his racial group.

36. In the year of 2010 none of the threats associated with the "PSR'S" actually occurred.

37. During the periods of normal program in 2010 Plaintiff received a maximum of one day of outdoor exercise per week, either a Saturday or Sunday, for a maximum of one and a half to two and a half hours, depending on whether it was a morning or afternoon session.

38. Multiple weeks in 2010 Plaintiff received zero hours of outdoor exercise when his housing units weekend yard was cancelled resulting in fourteen to twenty one days of no outdoor exercise.

39. During 2010 Plaintiff met with Defendant's Gonzalez, Holland, Steadman, Lundy and Schuyler at "MAC" meetings and discussed the substantial risk of harm of the inadequate amount of outdoor exercise being given to him and the other members of the general population, especially workers, and submitted written proposals for increasing the access to the yard, as well as discussing access to the exercise equipment and the track.

40. Starting in June 2010 Facility IV-A began shutting down program on Monday, Wednesday, and Friday, called "Down Days", where plaintiff was confined to his prison cell 24 hours a day with no work or outdoor exercise.

41. In July/August down days were reduced to twice a week, Monday and Wednesday, but Plaintiff's supervisor C/O Hutton would be rerouted to fill another post on Fridays still, and Plaintiff would be permitted to attend outdoor exercise in t he morning session when his housing unit was scheduled.

42. Plaintiff was continually subjected to minimal amounts of outdoor exercise the second half of 2010 to his transfer on February 1, 2011 due to this schedule of only allowing him one day of outdoor exercise per week on his days off.

43. Plaintiff filed an inmate appeal regarding the restricted amount of outdoor exercise he was receiving, first in June and again in July 2010.

44. Plaintiff sent his appeal regarding outdoor exercise directly to Defendant Gonzalez through confidential mail with a letter regarding his difficulty In getting his appeal processed.

45. This appeal was finally processed in August/ September 2010 and given log number CCI-0-10-01154 and denied at the first level of review on September 9, 2010.

46. Plaintiff resubmitted to the second level of review being dissatisfied and received no response.

47. Plaintiff appealed the fact that he received no response, after first writing the appeals coordinator on November 22, 2010, after his transfer to High Desert State Prison but the appeal was rejected.

48. Plaintiff objected to this rejection but Appeals Coordinator Nipper cancelled his appeal.

49. Plaintiff appealed the cancellation but Appeals Coordinator Sampson and Nipper rejected the appeal.

50. On September 2, 2011 an Appeals coordinator cancelled this appeal.

51. Plaintiff was prevented from having his original appeal processed, Log number CCI-0-10-01154, process past the first level of review when his resubmission was never answered, and his appeals to have a decision rendered were rejected and cancelled.

52. Plaintiff filed an inmate appeal about appeals being "lost", log number CCI-0-10-01155, including in it the "lost" first submission to the second level of review of his outdoor exercise appeal and wrote to Defendant Gonzalez about this occurring.

## OBJECTIVE COMPONENT

53. Paragraphs #1-52 are here by incorporated by reference.

54. November 1, 2008 through December 9, 2008 Plaintiff received zero hours of outdoor exercise Five and a half weeks.

55. From December 9, 2008 – September 2009 Plaintiff was forced to forgo outdoor exercise opportunities to attend Law Library and litigate his active case.

56. From December 9, 2008 – September 2009 plaintiff was not permitted access to the exercise equipment and track when he was given outdoor exercise for the majority of his yard time and many times not at all.

57. On March 27, 2009 information was received that staff was target for assault by black and Hispanic inmates. Plaintiff is white and was given no outdoor until April 10, 2009.

58. Plaintiff received minimal outdoor exercise opportunities the first Quarter of 2009 due to other program status reports which restricted his racial group when they were unassociated with the security threat, this was an exaggerated response and unjustified.

59. Plaintiff went out to court from May to June 2009.

60. From September 2009 through February 2011 Plaintiff regularly received a maximum of 1 day of outdoor exercise for 1 ½ - 2 ½ hours while facility IV-A was on normal program.

61. On December 31, 2009 facility IV-A was modified due to possible tension between black and Hispanic inmates, plaintiff was given no outdoor exercise for 3 weeks despite being unassociated with the security threat.

62. On March 15, 2010 Facility IV-A was modified due to information being received that balck prisoners were plotting to assault staff and inmates and plaintiff was permitted zero hours of outdoor exercise for the next 7 to 8 weeks, around May 3, 2010.

63. In the second half of 2010 plaintiff received very minimal outdoor exercise due to modified programs and in combination with only 1 opportunity per week maximum of outdoor exercise, he was not given adequate outdoor exercise.

64. In the second half of 2010 plaintiff did not received outdoor exercise on his one opportunity each week on normal program.

65. From September 2009 – February 1, 2011 when plaintiff was given his 1 day of outdoor exercise he was restricted from using the exercise equipment and track to exercise for much of his exercise time or all of his yard time.

## SUBJECTIVE COMPONENT

66. Paragraph #1-65 are hereby incorporated by reference.

67. Defendant Zanchi was Captain of facility IV-A in November – December 2008 and was aware housing unit four was being utilized as an Administrative segregation building.

68. Plaintiff placed an Inmate Appeal into the Appeals system on November 17, 2008 informing defendant Zanchi he was receiving zero hours of outdoor exercise.

69. Defendant Zanchi is aware of the substantial risk of harm of not given outdoor exercise because it is obvious.

70. Defendant Zanchi was aware of the substantial risk of harm of not giving outdoor exercise because the California Code of Regulations has a goal of outdoor exercise.

71. Defendant Zanchi was aware that Plaintiff was not being given outdoor exercise in accordance with CCI's Operations Procedure for outdoor exercise.

72. Defendant Zanchi was responsible for the Operation of Facility IV-A in 2008 -2009 including ensuring prisoners were given adequate outdoor exercise.

73. Because defendant Zanchi was aware of CCI had an allotted number of hours per week of outdoor exercise he was aware of the substantial risk of harm that denying outdoor exercise created.

74. Defendant Gonzales, Holland and Zanchi were responsible for forcing plaintiff in choosing between attending limited amount of outdoor exercise and attending the Law Library to prosecute his active case in 2009.

75. Defendant Zanchi had the authority to alter outdoor exercise schedules to permit plaintiff adequate outdoor exercise on facility IV-A in 2008 -2009.

76. Defendant Zanchi's actions and inactions deprived this plaintiff of the basic human need of outdoor exercise despite the obvious harm which would occur with such a deprivation and his actual knowledge of the substantial risk of harm and he failed to remedy this deprivation.

77. In June 2009 defendant Bryant became facility IV-A Captain and assumed the responsibility of the operation of the facility including ensuring prisoners were given adequate outdoor exercise.

78. After defendent Bryant became Captain Plaintiff met with him in his capacity as MAC Chairman and discussed the lack of outdoor exercise is being permitted for individuals with work assignments, the restriction of the exercise equipment and track and the substantial risk of harm of the not being given adequate outdoor exercise.

79. At the MAC meeting in September 2009 Plaintiff met with defendant Schuyler and addressed the issue of adequate outdoor exercise restrictions on the exercise equipment and track and the substantial risk of harm if not being given adequate outdoor exercise.

80. Plaintiff met with defendant Schuyler on numerous other occasions discussing the continuing problem of inadequate outdoor exercise for workers access to the exercise equipment and track and the substantial risk of harm.

81. Because defendant Bryant and Schulyer knew that facility IV-A had an allotted goal of a number of hours of outdoor exercise for week they were aware that the denials of this exercise created a substantial risk of harm to the plaintiff.

82. Defendant Bryant and Schuyler had the authority to alter the outdoor exercise opportunities but failed to remedy the outdoor exercise restrictions.

83. Defendant Bryant and Schuyler's actions and inactions deprived this plaintiff of the basic human need of outdoor exercise despite the obvious harm which would occur and the actual

knowledge of the harm to plaintiff with such a deprivation but they failed to remedy the deprivation.

84. Defendant Bryant and Schuyler forced plaintiff to choose between his limited amount of outdoor exercise and attending the Law Library to litigate his active case.

85. In June 2010 defendant Lundy became Facility IV-A Captain and assumed the responsibility of the Operation of the facility IV-A including ensuring prisoners were given adequate outdoor exercise.

86. Defendant Lundy was aware plaintiff was receiving only one day maximum of outdoor exercise per week for 1 ½ - 2 ½ hours and some weeks of zero house of outdoor exercise because plaintiff met with him personally and spoke with him about the substantial risk of harm.

87. Defendant Lundy had the authority to alter the outdoor exercise opportunities but failed to remedy the outdoor exercise restrictions.

88. Defendant Lundy was aware that CCI had a goal of an allotted number of hours of outdoor exercise per week he was aware that depriving plaintiff his outdoor exercise created a substantial risk of harm to him.

89. Defendant Lundy's actions and inaction deprived this plaintiff of the basic human need of outdoor exercise despite the obvious harm and he had actual knowledge of this harm plaintiff suffered from such deprivation and he did not remedy this deprivation.

90. Defendant Gonzalez, Holland, Steadman, Lundy, and Schuyler were submitted proposals to alter the outdoor exercise opportunities in 2010 by plaintiff in his capacity as MAC chairman.

91. Plaintiff met with defendants Gonzales, Holland and Steadman in his capacity as MAC Chairman and discussed the deprivation of outdoor exercise and the substantial risk of harm with such deprivations therefore they had actual knowledge of the substantial risk of harm but they disregarded it.

92. Defendants Gonzalez, Holland and Steadman had the authority to alter the outdoor exercise but failed to remedy the restriction to mitigate the substantial risk of harm despite their actual knowledge.

93. Defendant Gonzalez, Holland and Steadman's actions and inactions deprived this plaintiff of the basic human need of outdoor exercise despite the obvious harm and the actual knowledge of harm occurring with such deprivations and they did not remedy this deprivation.

94. Defendants Gonzalez, Holland, Steadman, Lundy and Schuyler did not consider the proposals submitted to them by plaintiff to increase the exercise opportunities.

## PRAYER FOR RELIEF

Wherefore plaintiff pray's for the following relief:

(A) Compensatory damages in the amount of $50,000.00 against defendants F. Gonzalez, K. Holland, T. Steadman, D. Zanchi, M. Bryant, J. Lundy and C. Schuyler, joint and severally.

(B) Punitive Damages in an amount to be proven at trial.

(C) Judgment against all defendants, joint and severally for the cost of this action. Plus, reasonable attorney fee if applicable.

(D) That this matter be tried by a Jury.

(E) That damages be bifurcated.

(F) Grant such relief that it may appear plaintiff is entitled.

Date: 11/12/13

Respectfully Submitted

Brent Adler   In Pro Se